[565 U.S. 34]

ERIC GREENE, aka JARMAINE Q. TRICE, Petitioner

v

JON FISHER, SUPERINTENDENT, STATE CORRECTIONAL INSTITU-
TION at SMITHFIELD, et al.

565 U.S. 34, 132 S. Ct. 38, 181 L. Ed. 2d 336, 2011 U.S. LEXIS 8077

[No. 10-637]

Argued October 11, 2011.  Decided November 8, 2011.

**APPEARANCES OF COUNSEL ARGUING CASE**

**Jeffrey L. Fisher** argued the cause for petitioner.
**Ronald Eisenberg** argued the cause for respondents.

**[565 U.S. 35]**

Justice **Scalia** delivered the opinion of the Court.

■ Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant habeas relief to a state prisoner with respect to any claim that has been "adjudicated on the merits in State court proceedings" unless the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of,

**[565 U.S. 36]**

clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). We consider whether "clearly established Federal law" includes decisions of this Court that are announced after the last adjudication of the merits in state court but before the defendant's conviction becomes final.

I

In December 1993, petitioner Eric Greene and four co-conspirators robbed a grocery store in North Philadelphia, Pennsylvania. During the robbery, one of the men shot and killed the store's owner. The five were apprehended, and two of them confessed to taking part in the robbery. Greene did not confess, but he was implicated by the others' statements.

When the Commonwealth sought to try all of the co-conspirators jointly, Greene sought severance, arguing, *inter alia*, that the confessions of his nontestifying codefendants should not be introduced at his trial. The trial court denied the motion to sever, but agreed to require redaction of the confessions to eliminate proper names. As redacted, the confessions replaced names with words like "this guy," "someone," and "other guys," or with the word "blank," or simply omitted the names without substitution.

A jury convicted Greene of second-degree murder, robbery, and conspiracy. He appealed to the Pennsylvania Superior Court, arguing that severance of his trial was demanded by the rule announced in *Bruton* v. *United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), that the Confrontation Clause forbids the prosecution to introduce a nontestifying codefendant's confession implicating the defendant in the crime. The Pennsylvania Superior Court affirmed the conviction, holding that the redaction had cured any problem under *Bruton*.

Greene filed a petition for allowance of appeal to the Pennsylvania Supreme Court, raising the same *Bruton* claim. While that petition was pending, we held in *Gray* v. *Maryland*, 523 U.S. 185, 195, 118 S. Ct. 1151, 140 L. Ed. 2d 294 (1998), that "considered as a class,

**[565 U.S. 37]**

redactions that replace a proper name with an obvious blank, the word 'delete,' a symbol, or similarly notify the jury that a name has been deleted are similar enough to *Bruton's* unredacted confessions as to warrant the same legal results." The Pennsylvania Supreme Court granted the petition for allowance of appeal, limited to the question whether ad-

**339**

mission of the redacted confessions violated Greene's Sixth Amendment rights. After the parties filed merits briefs, however, the Pennsylvania Supreme Court dismissed the appeal as improvidently granted.

Greene then filed a federal habeas corpus petition in the United States District Court for the Eastern District of Pennsylvania, alleging, *inter alia*, that the introduction of his nontestifying codefendants' statements violated the Confrontation Clause. Adopting the report and recommendation of a Magistrate Judge, the District Court denied the petition. It concluded that since our decision in *Gray* was not "clearly established Federal law" when the Pennsylvania Superior Court adjudicated Greene's Confrontation Clause claim, that court's decision was not "contrary to," or "an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

A divided panel of the United States Court of Appeals for the Third Circuit affirmed. *Greene* v. *Palakovich*, 606 F.3d 85 (2010). The majority held that the "clearly established Federal law" referred to in § 2254(d)(1) is the law at the time of the state-court adjudication on the merits. *Id.*, at 99. The dissenting judge contended that it is the law at the time the conviction becomes final. *Id.*, at 108. We granted certiorari. 563 U.S. 917, 131 S. Ct. 1813, 179 L. Ed. 2d 772 (2011).

## II

Section 2254(d) of Title 28 U.S.C., as amended by AEDPA, provides:

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any

[565 U.S. 38]

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

"(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

The issue here pertains to the first exception. We have said that its standard of "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law" is "difficult to meet," because the purpose of AEDPA is to ensure that federal habeas relief functions as a " 'guard against extreme malfunctions in the state criminal justice systems,' " and not as a means of error correction. *Harrington* v. *Richter*, 562 U.S. 86, 102–103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) (quoting *Jackson* v. *Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)).

In light of that objective, and relying upon the text of the provision, we held last Term, in *Cullen* v. *Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011), that ▮ review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at 182, 131 S. Ct. 1388, 179 L. Ed. 2d 557. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-

court decisions "against this Court's precedents *as of 'the time the state court renders its decision.'*" *Ibid.* (quoting *Lockyer* v. *Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003); emphasis added).

Greene resists that conclusion by appealing to our decision in *Teague* v. *Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989). *Teague* held that a prisoner seeking federal habeas relief may rely on new

[565 U.S. 39]

constitutional rules of criminal procedure announced before the prisoner's conviction became final. *Id.*, at 310, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (plurality opinion); see also *Penry* v. *Lynaugh*, 492 U.S. 302, 313, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989) (affirming and applying *Teague* rule). Finality occurs when direct state appeals have been exhausted and a petition for writ of certiorari from this Court has become time barred or has been disposed of. *Griffith* v. *Kentucky*, 479 U.S. 314, 321, n. 6, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987). Greene contends that, because finality marks the temporal cutoff for *Teague* purposes, it must mark the temporal cutoff for "clearly established Federal law" under AEDPA.

The analogy has been rejected by our cases. We have explained that AEDPA did not codify *Teague*, and that "the AEDPA and *Teague* inquiries are distinct." *Horn* v. *Banks*, 536 U.S. 266, 272, 122 S. Ct. 2147, 153 L. Ed. 2d 301 (2002) *(per curiam)*. The retroactivity rules that govern federal habeas review on the merits—which include *Teague*—are quite separate from the relitigation bar imposed by AEDPA; neither abrogates or qualifies the other. If § 2254(d)(1) was, indeed, pegged to *Teague*, it would authorize relief when a state-court merits adjudication "resulted in a decision that *became* contrary to, or an unreasonable application of, clearly established Federal law, *before the conviction became final.*" The statute says no such thing, and we see no reason why *Teague* should alter AEDPA's plain meaning.*

Greene alternatively contends that the relevant "decision" to which the "clearly established Federal law" criterion must be applied is the decision of the state supreme court that disposes of a direct appeal from a defendant's conviction or sentence, even when (as here) that decision does not adjudicate the relevant claim on the merits. This is an implausible

[565 U.S. 40]

reading of § 2254(d)(1). The text, we repeat, provides that ▮ habeas relief

"shall not be granted with respect to any claim that *was adjudicated on the merits* in State court proceedings unless *the adjudication* of the claim . . . *resulted* in a *decision* that *was* contrary to, or *involved* an unreasonable application of, clearly established Federal law . . . ." (Emphasis added.)

The words "the adjudication" in the "unless" clause obviously refer back to the "adjudicat[ion] on the merits," and the phrase "resulted in a decision" in the "unless" clause obviously refers to the decision produced *by that same adjudication on the merits*. A later affirmance of that decision on alternative procedural grounds, for

---

* Whether § 2254(d)(1) would bar a federal habeas petitioner from relying on a decision that came after the last state-court adjudication on the merits, but fell within one of the exceptions recognized in *Teague*, 489 U.S., at 311, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (plurality opinion), is a question we need not address to resolve this case.

example, would not be a decision *resulting from* the merits adjudication. And much less would be (what is at issue here) a decision by the state supreme court not to hear the appeal—that is, not to decide at all.

## III

The Third Circuit held, and the parties do not dispute, that the last state-court adjudication on the merits of Greene's Confrontation Clause claim occurred on direct appeal to the Pennsylvania Superior Court. 606 F.3d, at 92, and n. 1. The Pennsylvania Superior Court's decision predated our decision in *Gray* by nearly three months. The Third Circuit thus correctly held that *Gray* was not "clearly established Federal law" against which it could measure the Pennsylvania Superior Court's decision. 606 F.3d, at 99. The panel then concluded (and the parties do not dispute) that the Pennsylvania Superior Court's decision neither was "contrary to," nor "involved an unreasonable application of," any "clearly established Federal law" that existed at the time. *Id.*, at 106. Consequently, § 2254(d)(1) bars the federal courts from granting Greene's application for a writ of habeas corpus.

[565 U.S. 41]

We must observe that Greene's predicament is an unusual one of his own creation. Before applying for federal habeas, he missed two opportunities to obtain relief under *Gray:* After the Pennsylvania Supreme Court dismissed his appeal, he did not file a petition for writ of certiorari from this Court, which would almost certainly have produced a remand in light of the intervening *Gray* decision. "Where intervening developments . . . reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome of the litigation, [an order granting the petition, vacating the judgment below, and remanding the case (GVR)] is, we believe, potentially appropriate." *Lawrence* v. *Chater*, 516 U.S. 163, 167, 116 S. Ct. 604, 133 L. Ed. 2d 545 (1996) *(per curiam)*. See, *e.g., Stanbridge* v. *New York*, 395 U.S. 709, 89 S. Ct. 2033, 23 L. Ed. 2d 655 (1969) *(per curiam)* (GVR in light of *Bruton*). Nor did Greene assert his *Gray* claim in a petition for state postconviction relief. Having forgone two obvious means of asserting his claim, Greene asks us to provide him relief by interpreting AEDPA in a manner contrary to both its text and our precedents. We decline to do so, and affirm the judgment of the Court of Appeals.

It is so ordered.